IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LUCILLE JOINS o/b/o NRB, | ) | CASE NO. 1:15 CV 525 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

# Introduction

**A.    Nature of the case and proceedings**

This is an action by Lucille Joins on behalf of N.R.B under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying of the application of plaintiff, Lucille Joins, on behalf of N.R.B, a minor for children's supplemental security income ("SSI").[1] The parties have consented to my jurisdiction.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4]

---

[1] ECF # 1.

[2] ECF # 14.

[3] ECF # 10.

[4] ECF # 11.

Under the requirements of my initial[5] and procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

**B.     Background facts and decision of the Administrative Law Judge ("ALJ")**

N.R.B, who was 8 years old at the time of the administrative hearing,[11] currently lives with his paternal grandmother who was granted custody in 2011.[12]

The Administrative Law Judge ("ALJ") found that N.R.B had the following severe impairment: attention deficit hyperactivity disorder (ADHD).[13] The ALJ decided that the relevant impairments did not meet or equal a listing.[14]

---

[5] ECF # 7.

[6] ECF # 13.

[7] ECF # 15 (Joins's brief), ECF # 18 (Commissioner's brief), ECF # 19 (Joins's reply brief).

[8] ECF # 15-2 (Joins's charts), ECF # 18-1 (Commissioner's charts).

[9] ECF # 15-1 (Joins's fact sheet).

[10] ECF # 26.

[11] ECF # 15-1.

[12] ECF # 11, Transcript of Proceedings ("Tr.") at 172-173.

[13] *Id.* at 27.

[14] *Id.* at 28.

The Appeals Council denied N.R.B.'s request for review of the ALJ's decision.[15] With this denial, the ALJ's decision became the final decision of the Commissioner.[16]

## C. Issues on judicial review and decision

Joins on behalf of N.R.B. asks for reversal of the Commissioner's decision on the grounds that it does not have the support of substantial evidence in the administrative record. Specifically, N.R.B. presents the following issues for judicial review:

- Whether the ALJ erred in finding that NRB did not meet Listing 112.11 or alternatively have an extreme limitation in the domain of interacting and relating to others or marked impairments in the domains of acquiring and using information and in attending and completing tasks. She did not have substantial evidence to support her finding that the child was not disabled.[17]

- Whether the ALJ's reliance on reviewing physicians from the State Agency was misplaced and did not provide the support for the ALJ's denial of benefits.[18]

For the reasons that follow, I conclude that the ALJ's no-disability finding has the support of substantial evidence. The denial of Joins's application will be affirmed.

---

[15] *Id.* at 6.

[16] *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 648 (6th Cir. 2011); 20 C.F.R. §§ 404.981 and 416.1481.

[17] ECF #15 at 14.

[18] *Id*. at 20.

## Analysis

**A.      Standards of review**

*1.      Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[19]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner

---

[19] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

survives "a directed verdict" and wins.[20] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[21]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**B.     Application of standards**

This is a child SSI case involving ADHD as the severe impairment. Joins claims that the ALJ erred in finding that the child, NRB, who is the grandchild of Joins, did not meet or functionally equal the listing for ADHD at § 112.11. Joins essentially argues that the ALJ here "lacked substantial evidence and failed to state valid reasons for finding that NRB had less than marked (rather than marked or extreme) restrictions in the domains of attending and completing tasks, and interacting and relating to others."[22] In that regard, she concedes that there is no dispute concerning the ALJ's finding that NRB does not have a marked restriction in the domain of acquiring and using information.[23]

---

[20] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[21] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[22] ECF # 19 at 1.

[23] *Id.*

As formulated, this case presents a fairly narrow question.[24] In analyzing the evidence the ALJ here noted first that NRB has a diagnosis of ADHD from a medically acceptable source, but then proceeded to consider whether the symptoms of that condition are severe enough to meet the requirements of the listing at § 112.11.[25] To that point, the ALJ observed that to meet the criteria of the listing a claimant's impairment must cause a "marked" level of impairment in two of the four areas specified in paragraph B2 of Listing 112.02.[26] In those portions of the opinion now relevant to the contested issues, the ALJ found that NRB has less

---

[24] The claimant's sole focus here now appears to be on whether NRB functionally equals the listing. *Id.* at 1. However, the original brief also raises the related issue of whether NRB meets the criteria of the listing. Despite claimant's apparent assumption that the analytical categories for each review are the same (*see*, ECF # 15 at 13), the standards are actually similar with substantial overlap between them, but they are not identical. The ALJ here recognized this distinction and conducted a separate analysis for each question pursuant to each applicable standard. *See*, tr. at 28-29 (four criteria for meeting the listing - 1. cognition and communication, 2. social functioning, 3. personal care, and 4. concentration, persistence or pace); and 31-37 (six domains applicable to showing functional equivalence - 1. acquiring and using information, 2. attending and completing tasks, 3. interacting and relating with others, 4. moving about and manipulating objects, 5. caring for oneself and, 6. health and physical well-being).

As was noted in *Evans o/b/o DCB v. Commissioner of Social Security*, 2012 WL 3112415 at * 9 (E.D. Mich. March 21, 2012)(citations omitted) an ALJ's analysis for functional equivalency is not sufficient to also be an analysis for meeting a listing. Before an ALJ proceeds to examine the six domains of function so as to determine if a claimant's condition functionally equals the listing for ADHD, the ALJ, as here, must first go through the process to determine if the claimant can meet the listing in a separate determination.

That said, however, inasmuch as Joins here only raises her claims pursuant to the six functional domains that appear in the equivalency standard, the analysis here will be confined to the grounds chosen and argued by Joins.

[25] Tr. at 28.

[26] *Id*.

than marked limitations in attending and completing tasks,[27] and found further that NRB also had less than marked limitations in the domain of interacting and relating with others.[28]

In the domain of attending and completing tasks, the ALJ relied heavily on evidence from Joins herself. Specifically, the ALJ noted that in a function report on NRB prepared by Joins she stated that NRB keeps busy on his own, completes his homework, and does his chores most of the time.[29] She also noted that NRB is able to dress himself, brush his teeth, comb and wash his hair, pick up and put away his toys, and help around the house.[30] Moreover, now pointing to Joins' testimony at the hearing, the ALJ observed that she testified that NRB was able to complete such chores as folding his clothes and making his bed in the morning.[31] In addition, Joins testified that NRB had no problems completing his homework, and that he could be easily redirected when he had difficulty concentrating.[32] Finally, the ALJ observed that Joins testified that NRB's lack of focus "only happens when his medication wears off."[33]

---

[27] *Id*. at 33-34.

[28] *Id*. at 34-35.

[29] *Id*. at 33 (citing record).

[30] *Id*. (citing record).

[31] *Id*.

[32] *Id*.

[33] *Id*. at 33-34 (citing record).

As to the domain of interacting and relating with others, the ALJ again placed strong emphasis on Joins' testimony, but then also included observations from a teacher and from the report of a consultative examiner.[34] Specifically, she noted that in the same function report cited earlier, Joins reported that NRB has friends his own age, is able to make new friends, and generally gets along well with other adults and teachers.[35] Joins further reported that although NRB fights with other children in the home, those fights are just normal rivalry and the children generally get along.[36] Moreover, as noted earlier, the ALJ cited to a report from a teacher that indicated that NRB shares his toys with others,[37] and also took note of a comment from a teacher that it had been "a pleasure" working with NRB, and that he should "keep up [his] hard work."[38] Finally, the ALJ observed that in a report from a consultative examiner, NRB is cited as saying that he plays with friends and participates in sports.[39]

---

[34] *Id*. at 34-35.

[35] *Id*. at 34.

[36] *Id*.

[37] *Id*.

[38] *Id*. at 35 (citing record).

[39] *Id*. (citing record).

In both domains, the ALJ relied on the cited evidence as her reasons for concluding that NRB has less than marked limitations in both attending and completing tasks,[40] and in interacting and relating with others.[41]

Joins initially contends that the ALJ has selectively read the reports from NRB's teachers and school, which she argues actually supported greater functional limitations,[42] and has placed "too much emphasis" on her own testimony, which she gave "under the stress of a hearing" and not with the background of a trained professional.[43] More importantly, Joins contends that the psychological consulting examination by Dr. J. Joseph Konieczny, Ph.D. was also selectively used. The ALJ credited Dr. Konieczny's opinion that NRB has no limitations on his ability to acquire and utilize information, but found Dr. Konieczny's opinion in the areas of attending and completing tasks, as well as interaction with others, not reflective of the "improve[ment]" in these areas reflected in Joins' testimony and the school records.[44] Finally, Joins points to a 2012 assessment by Dr. Erika New, M.D., a treating psychiatrist, that she maintains supports the view that NRB is disabled.[45]

---

[40] *Id*. at 34.

[41] *Id*. at 35.

[42] ECF # 19 at 2, 4-5.

[43] *Id*. at 6-7.

[44] Tr. at 38.

[45] ECF # 19 at 6.

The ALJ recognized Dr. New as a treating source.[46] The ALJ then gave her assessment "great weight," as consistent with the education records and the opinions of the state agency reviewers.[47]

Without here considering whether the weight given and the reasons provided are fully consonant with the treating source/good reasons rule, which was not raised here, Dr. New gave her opinion three years after the last treatment visit with NRB shown in the medical record.[48] The medical source opinion itself is only a single page.[49] The opinion simply states that NRB's condition does affect his ability to attend and complete tasks, as well as his ability to interact with others, but it provides no details beyond brief comments that NRB is "impulsive and often argues with others" and has a "short attention span."[50] As such, Dr. New's opinion does not address the degree of severity that any limitation of function had reached.

Dr. Konieczny's opinion,[51] by contrast, contains more detail and specifically addressed the relevant criteria for ADHD. Dr. Konieczny opined that NRB had no limitations

---

[46] Tr. at 38.

[47] *Id.*

[48] *Id.* at 383 (treatment notes from 8/31/09), 433 (medical source opinion dated 8/30/12).

[49] *Id.* at 433.

[50] *Id.*

[51] *Id.* at 422-425.

-10-

in acquiring and using information,[52] nor in the area of self care.[53] In the area of attending and completing tasks, Dr. Konieczny found NRB "does have significant attention deficits. He requires frequent redirection to tasks."[54] In the area of interacting and relating with others, Dr. Konieczny stated that NRB "does appear to have difficulties in interpersonal relationships. He is often too aggressive with peers."[55]

While clearly more detailed and expressly relevant than Dr. New's observations, even Dr. Konieczny's opinions are not conclusively determinative of whether the "significant" attention deficits highlighted in the area of attending and completing tasks reflect a "marked" or "moderate" limitation, particularly in light of the immediate notation about "frequent redirection." Further, the conclusion that NRB has "difficulties" with interpersonal relationships arising from being "often aggressive with peers," also does not definitively answer the question of whether those limitations are marked or moderate.

In sum, even a careful reading of these opinions does not support the view that they provide directly contradictory evidence for the ALJ's ultimate opinion as to the degree of limitations. Moreover, the ALJ's decision to give mixed weight to Dr. Konieczny's opinion is again not subject to the standards that apply to treating source opinions, and as such must

---

[52] *Id.* at 424. In fact, Dr. Konieczny's testing showed NRB had a full scale IQ of 98, putting him in the average range. *Id.*

[53] *Id.* at 425.

[54] *Id.* at 424.

[55] *Id.* at 425.

only be supported by a reviewable statement of reasons for the weight given. Here, the ALJ's decision to accord lesser weight to the opinion as to attending and completing tasks, and the opinion on interacting with others rests on "improvements" in NRB's condition that the ALJ saw in the school records and Joins' testimony, which took place after Dr. Konieczny's opinion.

Thus, as Joins implies, the ALJ attached a great deal of significance to her testimony. Although Joins argues that her testimony should be understood differently than it appears on the surface, the ALJ accurately quoted that testimony within the context of determining the particular severity of the functional limitations imposed by the ADHD.  Further, as the Commissioner notes, the school records do show that NRB made significant improvements during the 2011-2012 school year, and that reports in the beginning of the 2012-2013 school year showed that while on his medication NRB was calmer and  better able to control his anger without aggression.

## Conclusion

Accordingly, I find that substantial evidence supports the decision of the Commissioner that NRB is not disabled. Thus, that decision is hereby affirmed.


IT IS SO ORDERED.

Dated: March 15, 2016                              s/ William H. Baughman, Jr.
                                                   United States Magistrate Judge